The plaintiff pled guilty to and was convicted of the second degree murder of Nigel Harlan. The facts of this horrifying murder are reported in the case of her companion. Nolen v.State, 376 So.2d 1145 (Ala.Cr.App.), cert. denied,376 So.2d 1148 (Ala. 1979). Sentence was twenty years' imprisonment. On May 5, 1981, Andrus was interviewed by two members of the Alabama Board of Pardons and Paroles in order to determine whether she should be granted parole in July of 1981. Parole was denied and on August 20, 1981, Andrus filed a complaint in circuit court alleging that the Board improperly denied her parole and requested that the circuit court issue a writ of mandamus or writ of habeas corpus commanding the Board to either reconsider her for parole or place her on parole. The circuit court denied Andrus' prayer for relief. She appealed that denial to the Supreme Court of Alabama, which transferred the cause to this court.
In denying Andrus' prayer for relief, the circuit court issued a written order. This Court fully agrees with and approves of the legal and factual findings of that court. The order is as follows:
"This case is submitted to the Court upon the pleadings, stipulations, memoranda of law and testimony as adduced at trial. . . . The case seeks relief by mandamus and by habeas corpus.
"The issues presented are as follows: (1) whether the Board of Pardons and Paroles followed the standards mandated by law in denying Plaintiff's parole; (2) whether the denial of Plaintiff's parole was the result of arbitrary and capricious action or an abuse of discretion on the part of the Board of Pardons and Paroles.
"The Plaintiff, an inmate in the State penal system, contends that she was denied parole by the Board due to arbitrary and capricious action on the part of the Board. She seeks a Writ of Habeas Corpus mandating her release from confinement, and alternatively, a Writ of Mandamus ordering the Board to grant her parole.
"Defendants contend that Plaintiff received due and proper consideration for parole and as a result of this consideration the Board, acting within its discretion, denied parole to the Plaintiff. Defendants further contend that the Plaintiff has received all due process rights to which she is entitled under law and that the denial of parole was not arbitrary and capricious.
"The standards to be applied in this case are included in Section 15-22-26, Code of Alabama, 1975, which provides in part:
 `No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned *Page 7 
in prison, but only if the board of pardons and paroles is of the opinion that there is reasonable probability that, if such prisoner is released he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society.'
"Both issues presented may be resolved by reviewing the applicable standards as enumerated in Section 15-22-26, supra, in conjunction with evidence submitted to this Court. As long as these standards are followed by members of the Board of Pardons and Paroles, actions taken by the Board are not arbitrary and capricious or abusive of discretion.
"Alabama's legislative standard for parole action has been recently analyzed by Judge Truman Hobbs, United States District Judge, in the case of Johnson [Johnston] v. Alabama Pardons andParoles Board, 530 F. Supp. 589 (M.D.Ala. 1982). Judge Hobbs succinctly states:
 "The issue of an inmate's entitlement to the constitutional protections of due process in regard to consideration for parole was addressed by the United States Supreme Court in Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1 [99 S.Ct. 2100, 60 L.Ed.2d 668] (1979). The Supreme Court in Greenholtz held that a statutory provision that holds out the mere possibility of parole does not create a liberty interest entitled to the protection of due process. Id. at 11 [99 S.Ct. at 2105-2106]. In that case, however, the Supreme Court found that the unique structure and language of the Nebraska parole statute provided an expectation of parole sufficient to create a liberty interest entitled to constitutional protection. Id. at 12 [99 S.Ct. at 2106]. Since the Supreme Court emphasized the unique structure and language of the Nebraska statute and the need for a case by case analysis of whether other state parole statutes provide a protectible entitlement, the task now before the Court is to compare the features of the Nebraska statute with those of its Alabama counterpart.
`The Nebraska parole statute requires that the Board of Parole order an eligible prisoner's release unless it finds one of four specific reasons to deny release. Section 83-1,114 (1) of the Nebraska Revised Statutes provides:
`Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
 "(a) There is a substantial risk that he will not conform to the conditions of parole;
 "(b) His release would depreciate the seriousness of his crime or promote disrespect for the law;
 "(c) His release would have a substantially adverse effect on institutional discipline; or
 "(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date."
`The Alabama Parole statutes, on the other hand, are substantially different from the Nebraska statute scrutinized in Greenholtz. Section 15-22-26 of the Alabama Code provides in part:
 "No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board of pardons and paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society."
`In addition, Section 15-22-28 (d) of the Alabama Code provides in part:
 "No prisoner shall be released on parole except by a majority vote of the board, nor unless the board is satisfied that he will be suitably employed in self-sustaining employment or that he will not become a public charge if so released." *Page 8 
 `The Alabama statutes dealing with the standards for release of prisoners on parole emphasize a number of subjective factors that must be considered before a prisoner is granted parole. These subjective factors include the probability that the prisoner will not again violate the law, whether the prisoner's release is not incompatible with the welfare of society, and whether the prisoner will be able to find suitable employment and not become a public charge if released.' (Emphasis added)
"The Plaintiff insists that board members, Lufkin and Porter, did not indicate in writing that `incompatibility with the welfare of society' was the reason for their denial of the parole. The Plaintiff takes the position that the decision must have therefore been based on improper reasons and standards. The Plaintiff contends that the sole reason for denial of the parole was a letter of objection sent to the board by the Attorney General of the State of Alabama. However, the witnesses from the board testified that Plaintiff's release on parole would not be compatible with the welfare of society. The Court finds from the evidence that the board gave careful consideration to the parole of the Defendant and that the denial thereof was based upon an evaluation consistent with the aforementioned legislative standard.
"A review of the presentence report, as contained in the record of this inmate, emphasizes the soundness of the denial of parole. On January 3, 1978, Debra Ann Andrus pled guilty to murder and armed robbery and received a twenty year sentence. The crime was especially heinous in nature with Andrus picking up the victim in the Bachelor's Showboat Lounge in Birmingham, Alabama, for the prearranged purpose of robbing him. Andrus and her male companion drove the victim out in the country, forced him to undress, whereupon the companion, Tony Noland, struck him with a rifle on two occasions — breaking the stock with the first lick and bending the barrel with the second. After the beating, Noland shot the victim in the legs and hand. Andrus and her companion then "rode around" some forty minutes and returned and Noland shot the victim four times in the head.
"The presentence report specifically says:
 `Noland and Andrus then left the scene in Noland's car (after the first shooting and beating) and drove around for approximately forty minutes. During that time they decided to return to the scene and kill the victim. When they returned the victim was on the ground a few yards from where he had been shot and was yelling for help.
 `Noland then got out of the car with the rifle and went to where the victim was lying on the ground and shot him four times in the head. Noland got back into the car and he and Andrus left the scene and drove to a nearby motel. On the way to the motel they threw the victim's clothes out on the side of the road. Several hours later, the subject and her companion returned to the scene and covered the victim's body with leaves and branches.'
"Judge Charles Nice of the Jefferson County Circuit Court in commuting Noland's sentence from death to life noted, `Debra Andrus appeared to be the stronger of the two personalities and that Tony Noland has apparently acted under the substantial domination of Debra Andrus.'
"This Court finds that the Alabama Pardons and Paroles Board acted properly in denying a parole to Debra Andrus. The record shows that this individual has been `on work release' since February, 1980, having worked as a waitress at a local club and at two local restaurants. This Court finds it absolutely incredible that some State administrative agency has decided that it is appropriate for Debra Andrus to be released to work in a club and in restaurants.
"It is CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court as follows:
 "1. Judgment be and is hereby rendered in favor of the Defendants on both the Mandamus and the Writ of Habeas Corpus aspects of the case. *Page 9 
 "2. All relief requested by the Plaintiff, Debra Ann Andrus, be and the same is hereby DENIED.
 "3. Costs of this proceeding be and the same are hereby taxed against Debra Ann Andrus."
The record does not support a finding that the Board acted in an arbitrary or capricious manner by denying parole to Andrus. Quite the contrary, the evidence reveals that the Board members acted in a conscientious and responsible manner in considering her parole. No evidence whatsoever was presented to substantiate a claim of denial of equal protection.
Furthermore, it is clear that our parole statutes do not create a "liberty interest" entitled to protection under the due process clause of either the U.S. Const. amend. XIV or Ala. Const. art. I, Section 6 (1901). Thomas v. Sellers,691 F.2d 487 (11th Cir. 1982); Johnston v. Alabama Pardon andParole Board, 530 F. Supp. 589 (M.D.Ala. 1982); Gaines v. State,415 So.2d 1, 2 (Ala.Cr.App. 1982).
The right to a parole is a privilege granted by the people of Alabama to those committed to our penal institutions as punishment for crimes. Holley v. State, 397 So.2d 211, 216
(Ala.Cr.App.), cert. denied, 397 So.2d 217 (Ala. 1981). Obtaining an early release through parole, like obtaining a pardon, is wholly contingent upon either the grace of the detaining authority or some affirmative statutory entitlement.United States v. Chagra, 669 F.2d 241, 264 (5th Cir. 1982). While no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence exists, Greenholtz v. Nebraska, 442 U.S. 1, 7,99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979), a prisoner has the right to be properly considered for parole. Christopher v. U.S.Board of Parole, 589 F.2d 924 (7th Cir. 1978); Wallace v.Turner, 525 F. Supp. 1072 (S.D.Fla. 1981). The paroling authority must comply with constitutional requirements and may not determine parole eligibility on improper grounds. Wallacev. Turner, supra. A parole should not be denied for false, insufficient, or capricious reasons. Christopher, supra.
The facts established that Andrus' file was reviewed several times before the May 5th parole denial as well as several times thereafter. The evidence also established that the protest filed by the Attorney General was not the sole reason for denying the parole. In fact, although it was given some consideration, it did not outweigh the other factors considered. While neither Lufkin nor Porter marked on the "reason sheet" that the reason for denial of parole was "release would not be compatible with society's welfare", their testimony clearly established that their decision to deny Andrus' parole was based upon such.
We agree with the finding of the trial court that the Board properly considered Andrus for parole and correctly applied the statutes governing such to her case. Under Alabama law, the Pardon and Parole Board is vested with wide discretion in determining parole eligibility. The record convinces us that Andrus received a fair determination of her eligibility for parole. We find no improper or capricious action on the part of the Board. It properly exercised its discretion in denying Andrus parole status.
A review of Andrus' contentions on appeal reveals no error. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 566